UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| VIATER TWIRINGIYIMANA,<br><br>Petitioner,<br><br>v.<br><br>TODD BLANCHE, et al.,<br><br>Respondents. | CASE NO. C26-2241JLR<br><br>ORDER |

## I. INTRODUCTION

Before the court is Petitioner Viater Twiringiyimana's petition for a writ of habeas corpus under 28 U.S.C. § 2241. (Pet. (Dkt. # 6); Traverse (Dkt. # 12).) The Government[1] opposes the petition in part. (Return (Dkt. # 9).) The court has considered

[1] Federal Respondents are United States Attorney General Todd Blanche, United States Department of Homeland Security ("DHS") Secretary Markwayne Mullin, United States Citizenship and Immigration Services ("USCIS") Acting Seattle Field Office Director Julio Hernandez, and USCIS (collectively, the "Government"). (Pet. at 7.)

the petition, the parties' submissions, the relevant portions of the record, and the applicable law. Being fully advised, the court GRANTS the petition.

## II. BACKGROUND

Petitioner was born in Rwanda in 1991 and was admitted to the United States as a refugee in 2007. (Pet. at 8; *see also* Bloom Decl. (Dkt. # 10) ¶ 3.) Petitioner adjusted status to become a lawful permanent resident in 2009. (Bloom Decl. ¶ 5.) On May 26, 2017, the Washington State Superior Court in Spokane, Washington, convicted Petitioner of first degree child molestation and sentenced him to a 51-month custodial sentence. (*Id.* ¶ 6; *see also* Return at 3.) On August 7, 2019, the Government issued Petitioner a Notice to Appear ("NTA"), placed him in removal proceedings, and subsequently transferred him to the Northwest ICE Processing Center ("NWIPC"). (Bloom Decl. ¶¶ 7-8; Wong Decl. (Dkt. # 11) ¶ 2, Ex. 2 (NTA).)

On January 16, 2020, an immigration judge ("IJ") ordered Petitioner removed and cancelled his status as a lawful permanent resident. (Bloom Decl. ¶ 9; *see also* Wong Decl. ¶ 2, Ex. 3 (Final Order of Removal).) Petitioner waived appeal and the order became administratively final on January 16, 2020. (Bloom Decl. ¶ 9.) The Government held him in custody for more than a year while unsuccessfully attempting to remove him to Rwanda, which refused to recognize Petitioner as a Rwandan citizen. (Pet. at 8; *see also* Bloom Decl. ¶¶ 10-11.) On January 29, 2021, the Government released Petitioner on an order of supervision ("OSUP"). (Pet. at 9; *see also* Bloom Decl. ¶ 12; Wong Decl. ¶ 2, Ex. 4 (OSUP).) Shortly thereafter, Washington placed Petitioner in custody to serve his sentence for his conviction. (Bloom Decl. ¶ 13.)

On April 13, 2026, Enforcement and Removal Operations ("ERO") arrested Petition upon his release from Washington state custody and transferred him to the NWIPC, where he has since remained. (*Id.* ¶ 14.) The Government represents that "no removal plans are in place at this time" and "ERO has not yet procured a travel document for Petitioner." (*Id.* ¶ 15.)

On June 30, 2026, Petitioner filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 asserting several bases for relief: (1) his continued detention violates the Due Process Clause of the Fifth Amendement because there is no significant likelihood of removal in the reasonably foreseeable future; (2) his re-detention without notice and an opportunity to be heard violates his procedural due process rights; (3) he is entitled to release because the Government failed to comply with its obligations under 8 C.F.R. § 241.13; and (4) the Government's third-country removal policy violates the Fifth and Eighth Amendments, 8 U.S.C. § 1231, the Convention Against Torture ("CAT") and its implementing regulations, and the Administrative Procedure Act. (*See* Pet. at 36-42.) Petitioner also requests five forms of injunctive relief setting conditions prior to his re-detention. (*Id.* at 42-43.) Petitioner's petition is now fully briefed and ripe for the court's consideration.

## III. ANALYSIS

Habeas petitioners must prove by a preponderance of the evidence that they are "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c); *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004).

**A. The Government's Continued Detention of Mr. Twiringiyimana is Unlawful.**

The Immigration and Nationality Act ("INA") authorizes the detention of noncitizens during the pendency of their immigration proceedings. 8 U.S.C. §§ 1225(b), 1226(a), 1226(c), 1231(a). Following a final order of removal, DHS must generally remove the noncitizen within 90 days, during which time detention is mandatory. *Id.* § 1231(a)(2). After this period expires, the statute permits continued detention only if the noncitizen is inadmissible, removable on specified criminal or security grounds, or determined to be a danger to the community or a flight risk. *Id.* § 1231(a)(6); *Zadvydas v. Davis*, 533 U.S. 678, 682 (2001).

The INA, however, does not permit indefinite detention. *Zadvydas*, 533 U.S. at 689. Instead, the Government may extend detention only so long as necessary to effectuate removal, and must release the individual once "there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* at 701. Detention is presumptively reasonable for the first six months. *Id.* Thereafter, if a noncitizen demonstrates that their removal is not significantly likely in the reasonably foreseeable future, the burden shifts to the Government to provide sufficient evidence in rebuttal. *Id.* If the Government fails to do so, the Government must release the noncitizen. *Id.*; *see also Jennings v. Rodriguez*, 583 U.S. 281, 301-03 (2018) (reaffirming that *Zadvydas* applied a constitutional avoidance analysis specifically to § 1231(a)(6)).

Petitioner argues, and the Government does not dispute, that his detention is unlawful because there is no significant likelihood of his removal in the reasonable future and, as such, his continued detention violates the Supreme Court's holding in *Zadvydas*.

(Pet. at 36; *see generally* Return (contending only that the court should deny Petitioner's requests for injunctive relief because they "exceed[] the narrow scope of habeas review" (citing Pet. at 42-43); Traverse at 2-4).) Because the Government does not dispute Petitioner's assertion that his continued detention is unlawful, the court grants the petition. The court next considers Petitioner's requests for injunctive relief.

**B. The Court Grants Petitioner's Requests for Injunctive Relief.**

In addition to his immediate release, Petitioner seeks five forms of prospective injunctive relief:

(1) an order prohibiting the Government from re-detaining him without a prior hearing before a neutral decisionmaker, where the Government must prove flight risk or danger to the community by clear and convincing evidence based on changed circumstances since his most recent release;

(2) an order prohibiting re-detention unless the Government obtains a valid travel document to Rwanda, provides that document to Petitioner and his counsel, and affords Petitioner a two-month opportunity to depart voluntarily, provided the Government has made concrete arrangements for his removal to Rwanda in the reasonably foreseeable future and Petitioner fails to depart;

(3) an order prohibiting the Government from removing or attempting to remove him to a third country without providing prior notice and a meaningful opportunity to respond in reopened removal proceedings, in compliance with statutory and due process requirements;

(4) an order prohibiting the Government from removing or attempting to remove him to any third country where he is likely to face imprisonment upon arrival; and

(5) an order directing the Government to release him under the same conditions as his most recent release. (Pet. at 42-43.)

In response, the Government asserts that the court should deny Petitioner's first four requests for injunctive relief because "Petitioner seeks injunctive relief that exceeds the narrow scope of habeas review." (Return at 4 (contesting only injunctive relief requests 1-4).) As detailed below, the court grants Petitioner's requests for injunctive relief.

The Government's objection to Petitioner's requests for injunctive relief fundamentally misconstrues the scope of federal habeas jurisdiction. Federal courts have jurisdiction to dispose of habeas matters "as law and justice require." 28 U.S.C. § 2243. The statute "does not limit the relief that may be granted to discharge of the applicant from physical custody." *Carafas v. LaVallee*, 391 U.S. 234, 239 (1968). Rather, district courts "enjoy 'broad' discretion in fashioning remedies for habeas relief." *Johnson v. Uribe*, 700 F.3d 413, 425 (9th Cir. 2012) (quoting *Hilton v. Braunskill*, 481 U.S. 770, 775 (1987)).

Under this robust equitable framework, the court retains wide latitude to impose conditional relief tailored to remedy the specific constitutional or statutory violations established in the petition. Specifically, where the Government seeks to execute a final order of removal, this court possesses explicit authority to enjoin re-detention unless and until the Government satisfies concrete conditions precedent. Recent decisions across

this Circuit consistently reaffirm this jurisdictional authority. For instance, in *Cortez Garrido v. Mullin*, the court concluded that "federal district courts generally retain subject-matter jurisdiction to issue injunctive relief regulating the conditions and manner of removal—as opposed to enjoining removal itself—where a noncitizen is subject to a final order of removal, despite 8 U.S.C. § 1252(g)." No. 5:26-CV-02230-AB-AJR, 2026 WL 1250271, at *5 (C.D. Cal. May 1, 2026); *see also Drammeh v. Clark*, No. C20-0045-RAJ-MAT, 2020 WL 5122445, at *6 (W.D. Wash. July 21, 2020), *report and recommendation adopted*, No. C20-CV-00045-RAJ, 2020 WL 5111252 (W.D. Wash. Aug. 31, 2020) (holding that 8 U.S.C. § 1252(g) does not bar district court jurisdiction to consider purely legal questions or issue injunctive relief where the gravamen of the claim does not challenge discretionary executive authority to commence proceedings); *J.R. v. Bostock*, 796 F. Supp. 3d 684, 690 (W.D. Wash. 2025) (holding that "Section 1252(g) does not strip [the court] of jurisdiction to issue injunctive relief" when a petitioner alleges that the government has violated his due process rights or carry out non-discretionary statutory duties").

The court may provide injunctive relief if Petitioner meets the standard for a permanent injunction. "According to well-established principles of equity, a [petitioner] seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). Petitioner must demonstrate: "(1) that [he] has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between [him] and [the Government], a

remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *Id.* (citations omitted). "Once a [constitutional] right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for breadth and flexibility are inherent in equitable remedies." *Swann v. Charlotte-Mecklenburg Bd. of Ed.*, 402 U.S. 1, 15 (1971); *see also Stone v. City & Cnty. of San Francisco*, 968 F.2d 850, 861 (9th Cir. 1992) ("Federal courts possess whatever powers are necessary to remedy constitutional violations because they are charged with protecting these rights.") (citations omitted).

First, Petitioner has suffered irreparable harm, and such harm is likely to recur absent injunctive relief to protect against further constitutional violations. Specifically, the Government has already detained him without due process and identified him as a target for detention. Despite this court's many orders holding that the Government's conduct in revoking release and re-detaining noncitizens without due process is unconstitutional, the conduct has continued. *See, e.g.*, *Vo v. Scott*, No. C26-00135JNW, 2026 WL 445046, at *5 (W.D. Wash. Feb. 17, 2026) ("[D]istrict courts have consistently held that before revoking an OSUP (or similar release order), the Government must provide pre-deprivation notice and a hearing."). Thus, absent injunctive relief, Petitioner may be subject to the same unconstitutional conduct again. The other *eBay* factors similarly favor injunctive relief. Monetary damages are an inadequate remedy for deprivation of liberty; requiring the Government to follow constitutional procedures imposes no undue hardship; and the public interest favors compliance with the law. *eBay*, 547 U.S. at 391.

Accordingly, the court finds it appropriate to prohibit re-detention of Petitioner absent notice and opportunity to be heard and proof that the Government has obtained a valid travel document, as described more fully below. Several courts in this district have granted similar relief. *See Wana v. Bondi*, No. C25-2321RSL, 2025 WL 3628634, at *6 (W.D. Wash. Dec. 15, 2025) (prohibiting re-detention without notice and hearing); *Tzafir v. Bondi*, No. C25-2067JHC-SKV, 2026 WL 74088, at *5 (W.D. Wash. Jan. 9, 2026) (same); *Yuksek v. Bondi*, No. C25-2555DGE-GJL, 2026 WL 60364, at *5 (W.D. Wash. Jan. 8, 2026) (same); *Do v. Scott*, No. C25-2187RSL, 2025 WL 3496909, at *4 (W.D. Wash. Dec. 5, 2025) (prohibiting re-detention without a valid travel document and other specified conditions). By conditioning the Government's ability to re-detain Petitioner on the completion of a showing of travel readiness and a 60-day notice period, the court properly exercises its robust § 2243 mandate to ensure that any future deprivation of Petitioner's liberty strictly comports with due process.

Finally, the court also agrees with Petitioner that his request for protection against third-country removal is warranted. Although the Government opposes this request, it fails to contest the specific factual allegations underpinning his claims, namely that the Government's removal scheme is designed to punish and deter; noncitizens removed to third countries are likely to be imprisoned in prisons, camps, or other facilities; and the Government selected countries known for human rights abuses for third country removal. (*See* Pet. at 23-30 (so asserting); *see also* Return (failing to address the Petitioner's claims).) By remaining silent on these critical facts, the Government effectively concedes that its current third-country removal practices and policies violate Due

Process, the INA, and the CAT, and amount to unlawful, punitive banishment. *See Rodriguez-Zuniga v. Garland*, 69 F.4th 1012, 1023 (9th Cir. 2023) (explaining that a party must "specifically and distinctly" raise an argument or challenge an issue, and that a "failure to contest [a] point is fatal to [the party's] claim"); (*see also* Pet. at 18-34 (so arguing)). The Government does not address in its briefing Petitioner's allegation that its procedures violate the law. (*See* Traverse at 11 (compiling cases in this District holding that the Government's practice of third-country removal is punitive as a matter of policy and thus violates due process under *Wong Wing v. United States*, 163 U.S. 228, 236-38 (1986)).) Furthermore, the Government does not dispute that Petitioner faces a high risk of being subjected to these very practices, nor does it offer any affirmative assurances that it will refrain from attempting to unlawfully deport him to a third country. (*See generally* Return.) Accordingly, because the material facts and underlying legal violations stand uncontested, the court deems that the Government has conceded these points. Thus, the court grants Petitioner's request for injunctive relief as to third-country removal because (1) he does not seek a categorical prohibition on third-country removal, but rather an injunction ensuring that any such removal strictly complies with due process and controlling statutory frameworks, (Pet. at 18-22), and (2) 8 U.S.C. § 1252(g) does not divest the court of jurisdiction to protect constitutional and statutory rights during the execution of a removal order.

//

//

//

## IV. CONCLUSION

For the foregoing reasons, the court GRANTS the petition (Dkt. # 6). The court ORDERS that Respondents and all their officers, agents, employees, attorneys, and persons acting on their behalf or in concert with them:

(1) SHALL release Petitioner Viater Twiringiyimana from detention within FORTY-EIGHT (48) hours pursuant to the conditions of his most recent Order of Supervised Release;

(2) must not re-detain Petitioner without a prior hearing before a neutral decisionmaker, where the Government bears the burden to establish flight risk or danger to the community by clear and convincing evidence based on changed circumstances since his release;

(3) must not re-detain Petitioner unless the Government first obtains a valid travel document to Rwanda, provides copies to Petitioner and his counsel, and allows Petitioner two months to depart voluntarily, provided that concrete arrangements for removal in the reasonably foreseeable future are in place and Petitioner fails to depart;

(4) must not remove or attempt to remove Petitioner to a third country without providing prior notice and a meaningful opportunity to respond within reopened removal proceedings;

//

//

//

(5) are strictly prohibited from removing or attempting to remove Petitioner to any third country where he faces a likelihood of imprisonment upon arrival.

Dated this 3rd day of September, 2026.

JAMES L. ROBART
United States District Judge